New York County. — HON. D. C. CALVIN, Surrogate. — February, 1878.

## WELLER v. SUGGETT.

*In the matter of the estate of* THOMAS SUGGETT, *deceased.*

The committee of a legatee, who had been adjudged a lunatic, by default, in the court of another state, which had thereupon appointed the committee, sought to represent such legatee, on the final accounting of the executor, and claimed to be entitled to receive the legatee's share of the estate. *Held*, that such committee could not intervene on the accounting, and had no standing in court by virtue of his foreign appointment.

FREDERICK MARZ, the executor, filed his petition for a final accounting, and sought to make Thomas Suggett

and Charles Henry Suggett, parties thereto, as the sole legatees under the will.

On the return day, Charles B. Weller, of Desmoines County, Iowa, appeared by attorney, setting forth that Charles H. Suggett was a lunatic, and that he had been appointed his guardian, and demanded that his share of the estate be paid to him as such.

Annexed to the guardian's petition, was a certified copy of his appointment as guardian of the legatee, who had been adjudged a lunatic by default.

On the objection of the executor, it was determined that such foreign guardian had no right to intervene in this court as the representative of the alleged lunatic. Subsequent thereto, upon application of the guardian's counsel, a re-argument was had, after which the alleged lunatic appeared before the court and filed a petition setting forth that he was unaware of the proceedings pending in this court, and the application of Weller as guardian;— that he received no notice thereof, and was of sound mind, and objected to Weller's appearance; and demanded that the share payable to him, should be paid him personally.

The executor desires to file his account, but awaits the determination of the question respecting the authority of the so called guardian to intervene.

C. K. CORLISS *for legatee.*

ANDREW GILHOOLY, *for the guardian.*

ALFRED ERLBE, *for the executor.*

THE SURROGATE. — The only questions requiring consideration are :

*First,* Whether the so called guardian, by virtue

of his alleged appointment in Iowa, is entitled to intervene in behalf of the alleged lunatic, under the circumstances of this case.

*Second,* Whether on the accounting, the fund belonging to the alleged lunatic should be paid to him in defiance of the pretended claim of his guardian, in case it shall be held that he has no right to intervene. But the latter question does not necessarily arise at this time, and should await the entry of the decree to be made on the accounting.

On the former hearing, I held under the authority of Matter of Neally, (26 *How. Pr.,* 402), that the guardian could not be recognized by our courts on his application for the property belonging to the lunatic in this State. But it is claimed by the counsel for such guardian that the case cited is not the law of this State, and he seeks to draw a distinction between the case of the guardian of an infant and the committee of a lunatic, upon the authority of Morrison's case, in the House of Lords, (cited in 1 *H. Blackstone,* 677), where it is stated that Morrison was a lunatic, who removed into Scotland, and his committee instituted suit there, but the court in Scotland held that they could not maintain the action, and then proceeds to state the reasons against that decision in the appellant's pretended case; but in 1 Kay & Johnson, 283, that case is stated as that the committee brought an action to recover personal estate of the lunatic, which the court decided against, but on appeal the House of Lords reversed the decision. Wood, V. C. held in the case of Scott *v.* Bentley (*Ib.*), that the *curator bonis* duly appointed in Scotland to a person found lunatic

there, can recover and give discharge of personal property of the lunatic in England, also that the assignees of a bankrupt can recover the property of a bankrupt out of the jurisdiction; that executors and administrators have no such right, because the jurisdiction of the Prerogative Courts does not extend beyond their respective provinces, and that the authority of guardians in England in this respect was doubtful. In discussing the right of the guardian, he says: that "there was considerable difference between guardians who were present, upon the subject; but the main point decided was, that of the right over infants when within the jurisdiction, but Lord Lyndhurst found that the guardians had no such right;" Lord Cottenham had said they had no right of suing for the infant's property in this country, and then states the distinction as to executors and administrators; and says that the case is more analogous to the law of bankruptcy, where the Acts of Parliament vest the right to a bankrupt's property in the assignee, and he is allowed to sue in the Scottish courts, to recover property of the bankrupt in that country, and that he could not see why the order of a court of competent jurisdiction should not have the same effect as the bankrupt acts for this purpose.

The case of *Morrison* seems never to have been reported, and some confusion has arisen when it has been cited.

*Story on the Conflict of Laws*, (§ 499,) recognizes that case as authority for the principle that an English guardian could institute a suit for the personal property of his ward in Scotland, upon the

ground that administration of his personal estate granted by the usual authority where he resided, must be taken to be everywhere of equal force with a voluntary assignment by himself.   He states that the Courts of Scotland decided the other way, but that it did not distinctly appear whether it had been acted upon in England, and then the learned author uses this language: "It has certainly never received any sanction in America in the States acting under the jurisprudence of the common law.   The right and the power of guardians are considered strictly local, and not as entitling them to exercise any authority over the person or the property of their wards in other States, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors or administrators."

In Morrell v. Dickey, (1 *Johns. Ch.*, 153), it is held that the guardian of an infant appointed in another State, is not entitled to receive from the administrators here, the legacy or portion of the infant, and the Chancellor (p. 155) after stating that it was well settled that our courts would not take notice of letters testamentary or administration granted abroad, or out of the State, and that they gave no authority to sue here, says:   "This case is within the reason of that rule, and the securities taken in the Orphan's Court of Philadelphia may not be adequate to reach property within this State.   This court must judge itself, of the securities, before it directs the payment of the infant's money."

In McLoskey v. Reid (4 *Bradf.*, 334), it was held that foreign guardians had no extra-territorial author-

ity, and letters of foreign guardianship afforded no title within this State.

Notwithstanding the distinction which the counsel for the alleged guardian or committee seeks to draw between the authority of a guardian, and the committee of a lunatic, I am unable to perceive any substantial difference; and it seems to me that if the guardian of an infant appointed in another State cannot be recognized as such for the purpose of recovering the property of his ward, because the security given in the State where he was appointed might be inadequate to the property sought to be recovered here; the same principle is involved in the case of a foreign committee whose securities may be inadequate to the property sought to be recovered here; and that doctrine is based upon the insecurity and impropriety of allowing such committee to recover the property of his ward, and not because in a particular instance the security may be ample or the debts of the lunatic insignificant.

It is held to be the duty of our courts to protect the property, and not to part with it except upon ample security; and another reason might well be given that so far as creditors are concerned they should not be turned over to the personal liability of the committee or his sureties in a foreign State, but it is the duty of our courts to so administer the laws as to protect creditors within our jurisdiction.

This principle is more particularly applicable to the case of a lunatic who probably may owe debts, while the infant, by reason of his infancy, would be unlikely to be indebted.

In the Matter of Perkins (2 *Johns. Ch.*, 124), the lunatic had been found such by inquisition in Massachusetts, and the petitioner had by the competent authority of that State been appointed guardian of the person and estate of the lunatic, and prayed in this State that certain real estate belonging to the lunatic might be sold for his expenses and maintenance. The Chancellor held that it was necessary that a commission issue here; that the inquisition abroad was not sufficient to authorize a sale; and that the inquisition might be a sufficient ground to warrant an inquisition here, or at least sufficient to warrant the issuing of a commission.

In the Matter of Taylor, (9 *Paige*, 611), it appeared that the lunatic resided in Connecticut where he had a committee of his person and estate. It was held that no committee of his person would be appointed here, nor any provision for his support be made out of his property in this State, until that in the hands of his committee was exhausted, but the committee of his estate here was authorized to make such further provision for his support as they should think necessary, whenever they should become satisfied that the estate in the hands of the committee in Connecticut had been exhausted.

In that case the necessity of appointing a committee here in respect to property in this State, and his exclusive control over it, seems to have been fully recognized.

The case of Neally, above stated, seems to be sustained by the reasoning above suggested, as well as by the authorities, and I can see no reason why I should either disregard its conclusions or authority.

I have not regarded the English learning upon the subject of the different sources of authority in cases where the guardians of an infant and the committee of a lunatic are concerned. While there may be a reason for the distinction recognized in the case of Morrison, and in *Ex parte* Fitzgerald (2 *Sch. & Lefr.*, 438,) under the English system, I am unable to perceive any substantial difference growing out of the authority of our courts over infants and lunatics; the power to appoint resides primarily in the Supreme Court in Equity.

It is urged that upon the ground of comity between the States, the committee in this case should be recognized as having authority over the lunatic's property here, by virtue of his Iowa appointment, because that principle of comity will be always recognized in cases where the prior rights of domestic creditors and claimants are not involved, and it is alleged they are not in this case. But if I rightly understand the rule which excludes foreign executors, administrators, and guardians from invoking the aid of our courts in recovering the estate of a testator, intestate or infant, it is not that in all cases domestic creditors and claimants have a superior claim, but because they are liable to have, and because our courts owe a duty to the infant to see that the security shall be adequate, and he who takes the property shall be answerable to our courts, and it is the policy of the law as administered in this State to provide against any unjust interference with the rights of local claimants, and our courts never relax that rule because in a particular instance there may be no such claimants.

I am of the opinion that the so called guardian of the alleged lunatic has no right to interfere in this proceeding as representing such lunatic by virtue of his foreign appointment, and that his petition should therefore be dismissed.

Ordered accordingly.